Johnson, J.
delivered the opinion of the Court.
It appears from the report of the presiding Judge, that the prisoner was brought before a Court of justices and freeholders, organized under the act of 1740, and put upon his trial as a free person of colour, for negro stealing. He pleaded first to the jurisdiction of the Court, that he was not a free person of colour, within the meaning of the act, but a free white citizen, and therefore not amenable to that jurisdiction : and that fact being found'against him, he pleaded, 2ndly, that more than six days having elapsed, between his arrest and the time of his being put upon his trial, the Court had no power to proceed in the trial. This matter was determined in his favor and the tidal was not proceeded in. The presiding magistrate, however, corn-mil tod I.i.n to gaol, tobe further dealt with, according to.law. The prisoner remained in confinement until the next Circuit Court, when he was brought up by a writ of habeas corpus, auá *295 a motion made for his discharge ; but the presiding judge being of opinion that the Court of justices and freeholders had erred in point of law, on the prisoner’s second ground of defence, refused to discharge him; and, on the application of the Solicitor, ordered a writ of mandamus to issue, to compel the said Court of justices and freeholders, to proceed to his trial on the merits. From this order the prisoner has appealed, and has renewed, here, the motion for his discharge.
The questions, growing out of the facts above stated, arc the following. 1st, Whether the Court of justices and freeholders was competent to try the question, whether the prisoner was or was not a free person of colour, within the meaning of the act. And 2nd, whether the prisoner was not intitled to be discharged, that Court having determined, that the time had elapsed, in which they were authorized to try him.
It is difficult to conceive of a proposition more obvious, than that,prima facie, every Court must possess the power of judging of its own jurisdiction, both in relation to the persons of the parties, and the subject matter of litigation. Without it the subordinate jurisdictions would be wholly unable to proceed in any cause without the intervention of the superior Courts. One may plead to the jurisdiction, matter which is wholly impertinent, and unfounded, and if the plea aloue were sufficient to oust the Court of jurisdiction, the cause must forever stand still; for the inferior Courts have no power to compel the party to remove the question to a higher jurisdiction, nor can the inferior Court itself refer it there. The truth of this position is proved by the form of the pica itself. If the objection to the jurisdiction arise out of the subject matter of litigation, the plea, in conclusion, prays judgment, if the Court will take further cognizance of the suit: and if it be that the Court has not jurisdiction over the person of the defendant, it prays judgment, if he ought to answer. 1 Tidd. Prac. 690. Thus directly putting in issue, and submitting the question of jurisdiction, to the forum where the plea is pleaded.
It follows, that ordinarily, the judgment of an inferior Court, on the question of jurisdiction thus submitted to it, has the same binding efficacy on the parties, as its judgment in any other matter, confessedly within its cognizance,; and that errors in this respect, can only be corrected in the same manner that its *296 other errors are. The ouly exception to this rule, is where the waut jurisdiotion is apparent on the face of the proceedings themselves. Iti those cases the superior Courts will interfere, even after sentence, and restrain the inferior Court by prohibí- * tion. Bac. Abr. Prohibition. II.
But when a party objects to the jurisdiction of an inferior Court, whether in respect to his person, or the subject matter of litigation, he is not obliged ex necessitate, to submit the question to that tribunal. The superior Courts have a superintendence over all inferior Courts, and if such Courts assume a greater, or other power than is allowed them by law, or if they expound the laws otherwise than according to their true intent, they will be restrained by prohibition. Bac. Abr. supra.
According to the foregoing rules, the prisoner, by pleading the matter contained in the first ground of defence, submitted that question to the Court of justices and freeholders; and he is, in strictness, bound by their judgment, if he had intended not to have trusted the question to the determination of that tribunal, the course clearly pointed out, was to have slated, in the form of a suggestion, the facts shewing that it had no jurisdiction over his person, and upon a proper case made, the Circuit Court would have ordered a prohibition. These facts do not appear upon the face of the proceedings, and regularly the application is now too late; but of this I shall have occasion to remark hereafter.
In regard to the objection that the Court could not proceed to the trial of the prisoner, on account of the lapse of time between bis arrest and his being put on his trial, I concur fully with the presiding judge, that it was no bar. The act of 1740, under which this question arises, provides, in sec. 9. P. L. 165, that uptm information made before a magistrate, that a capital of-fence has been committed by a slave, he shall summon a Court, consisting of the persons designated, to assemble at a certain clay and place, not exceeding three days after the apprehension of such slave, and shall finally hear and determine the matter brought before them, in the most summary manner. And by sec. 14, Ib. 166. accusations against free negroes and other persons of colour are to be proceeded in, and determined in the same manner. The act of 1754, sec. 3, and 4, P. L. 236, repeal» this provision, as to time, and leaves it to the discretion of the *297 justices and freeholders, at any time within six days after the arrest of the offender, on sufficient cause shewn, to postpone the trial to a further day.
I am not disposed to enter into a minute analysis of those acts, to ascertain whether the act of 1754 embraces free persons of colour as well as slaves. It is sufficient that the Court of justices and freeholders, in this case, did not proceed to the trial of the prisoner within six days after his arrest; and conceding to the appellant the position, that the act requires that the trial should be proceeded in, and determined, in the most summary manner, the question then arises, whether the neglect of the Court to do so, is a bar to the further prosecution.
Neither of these acts contain in themselves any direct limita tion of the prosecution, or any prohibition against the proceeding of the Court after the expiration of the time specified : they do not, therefore, necessarily afford any protection to the party accused, and can only be regarded as directory to the Court. The proceedings of all our Courts are regulated by rules established by law. The Circuit Courts have their regular return-days and sessions, and if the pleadings are made up, it is understood that the cause stands for trial at the regular term. The same formula, and the same consequences, arc looked to in a trial in a magistrates Court; and yet no one ever heard that a cause was out of Court, because' the Court was not ready to proceed in the trial at the time prescribed by these rules : and when the counsel for the prisoner urge this argument, they only look atone sideof the question.
If the act is imperative, and the Court must proceed in the limited time, what would be the condition of the prisoner ? The next hour or the next minute might bring him evidence to establish his innocence beyond doubt; and will he then insist, that the Court must exercise no discretion, but decide his fate, whether ho be prepared or not 1 And yet this must be the effect of the rule now contended for: if it operates for him, it must also operate against him. The time which had elapsed was not, therefore, a bar to the prosecution ; but the act is wholly directory to the Court, and although their non-conformity to it, was a culpable negligence, for which they were responsible, yet the prisoner could derive no benefit from .it.
Vide State v. Hudnall, 2N. &M.4J9. Exparte Richardson, Harp. 308.
Illegal and erroneous, however, as was the determination of the Court of justices and freeholders on this point, I was disposed, on the first view of it, to think that their judgment, upon it, was in effect, an acquittal of the prisoner, and that he was infilled to his discharge ; and had the prisoner been put upon his trial on the merits, and acquitted on this ground as a bar, I should have thought so still, for it was a matter properly within their cognizance, and consequently, a mandamus would not have lain, nol-is any appeal given, from their judgment. But in looking more minutely into their proceedings, I find that it was interposed as an objection to the authority of the Court, to try the prisoner, and uot as a bar to the prosecution. It constitutes, then, exactly the case of the exposition of a statute by an inferior Court, contrary to its true intent, which it is the province of the superior Courts to correct and control.
This view leads to the conclusion, that the writ of mandamus, directing the Court of justices and freeholders to proceed in the trial of the prisoner, was properly awarded. But it is very apparent, from all the circumstances, that neither the prisoner, nor his counsel were willing to have submitted to that tribunal, the question, whether he was, or was not, a person falling within the description of those, over whom the Court of justices and freeholders had jurisdiction; and that the proceeding by prohibition, to remove it to the superior Court, was not resorted to, on account of the absence of any precedent in our own practice authorizing it, and that they were surprised into the course pursued, and did not adopt it willingly.
The question, whether the prisoner is infilled to be tried by a jury, according to the forms of the common law, or in the summary, and in some degree arbitrary manner, authorized by the act under which he was arrested, is, of itself, of little less importance than that of life and death. It is, whether he shall occupy the rank of a free white citizen, or one corresponding, in this respect, with that of a slave ; and I cannot consent, where the-Court possesses any discretion, that a question so important, should be compromitted by the want of a precedent, or inadvertence, or surprise, and I am, therefore, of opinion, that the prisoner should yet be afforded an opportunity of testing this question by the rules before laid down.
F. I. Moses, for motion.
Evans, Solicitor, contra.
It is, therefore, ordered, that the proceedings'of the Court of justices and freeholders be set aside, and that the order for the writ of mandamus be suspended until the second Monday, after the fourth Monday of March next, in order to give the defendant an opportunity of applying for a writ of prohibition.